## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| QIANG LI, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | Civil Action No. 3:17-CV-2249-X-BH |
| | § | |
| VERIZON WIRELESS TEXAS, LLC, | § | |
| et al., | § | |
| | § | |
| **Defendants.** | § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings, evidence, and applicable law, *Defendants Verizon Wireless Texas, LLC and Satya Sharma's Motion for Summary Judgment*, filed August 23, 2019 (doc. 65), should be **GRANTED,** and all of the plaintiff's claims should be **DISMISSED with prejudice**.

### I.  BACKGROUND

Qiang Li (Plaintiff) sues Verizon Wireless Texas, LLC (Employer) for discrimination in employment on the basis of race and national origin and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.  (doc. 1 at 5-6.)[2]  He also sues Satya Sharma (Supervisor) for discrimination under § 1981 and for defamation under state law. (*See* doc. 71 at 7-8.)

Plaintiff began working for Employer in 1998 in the Telecom/Business IT unit. (doc. 67 at 811-12.) In June 2014, Plaintiff applied for a position with Employer on the Commercial Data Systems (CDS) team. (*Id.* at 4, 55, 57.)  He went through a three-part interview, the first of which

---

[1]By *Order of Reference* filed September 24, 2018 (doc. 24), this case was referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

was conducted via telephone by Supervisor. (*Id.* at 57-59, 347, 702.) Supervisor recommended Plaintiff for a second interview with the manager of the CDS team. (*Id.* at 702.) During his second interview, the manager was "satisfied with [Plaintiff] based on the . . . qualifications of the job, and he recommended him to [Human Resources]" for hire. (*Id.* at 347.) Plaintiff's third interview was with a human resources representative. (*Id.* 67 at 58.)

On July 20, 2014, Plaintiff joined the CDS team. (*Id.* at 70,702-03, 721; doc. 79-2 at 4.)  His job duties and responsibilities included "responding to time-sensitive alarms on several databases and applications to address any issues that require troubleshooting and avoid network outages," as well as "be[ing] available on-call as part of an on-call rotation or as to specific projects." (doc. 67 at 703, 720.) The CDS team was made up of twelve employee and two contractors of "diverse races and national origins"including Asian and white employees, as well as individuals of Indian national origin. (*See id.* at 356-57, 790, 914, 1048, 1051.)

According to Employer and Supervisor (collectively Defendants), Plaintiff struggled to work on several projects at a time, missed deadlines and milestones, failed to meet specified project goals, failed to deliver projects, made errors on assignments, caused project delays, and did not actively communicate about project delays until the deadline approached. (*See id.* at 704-714,716,732-764,770-78.) Supervisor had conversations with Plaintiff regarding his missed meetings, failure to respond in a timely manner, and being unavailable and/or unreachable, as well as the multiple complaints he received about  Plaintiff's work ethic and performance. (*Id.* at 359-60, 548, 555-56, 647, 723, 725-26, 728, 907-08.) Supervisor communicated these issues to Plaintiff and documented them in his 2015 Mid-year and Year-end performance reviews. (*Id.* at 197, 707-08, 908.)

On August 7, 2015, during a Mid-Year Performance Review, Supervisor informed Plaintiff

that team members had escalated concerns regarding his performance on multiple occasions. (*Id*. at 711,744; doc. 79-2 at 4,65.) To address these complaints and performance issues, and to allow Plaintiff to demonstrate that he could fulfill the requirements of the job, Supervisor set out five areas of improvement for Plaintiff to help him:   (1) develop better project/task planning/organizational skills; (2) take ownership of the tasks that had been assigned to him; (3) pro-actively communicate project status and proposed changes to the lead engineers; (4) keep all related parties and his stakeholders advised of any alterations to his work schedule and/or impact to the deliverables assigned to him; and (5) make sure that he sought management approval prior to altering his regular work schedule hours. (doc. 67 at 709.) In his 2015 Year-End Performance evaluation, Plaintiff received a rating of "developing," because he had failed to improve in these five specific areas.  (*Id.* at 275, 740-43; doc. 79-2 at 4.)

On August 18, 2016, Plaintiff was placed on a Performance Improvement Plan (PIP), which he signed. (doc. 67 at 369, 750-53; doc. 79-2 at 3.) The initial plan period for the PIP was from August 22, 2016 to October 24, 2016. (doc. 67 at 369, 777, 785; doc. 79-2 at 3.) It was explained to Plaintiff that employees who failed to achieve satisfactory progress at the end of their PIP were subject to termination.  (doc. 67 at 784.) While on the PIP, he was required to submit weekly status reports to Supervisor via email for feedback, and he received weekly coaching sessions. (*Id.* at 777, 909; doc. 79-2 at 3.) Despite these efforts, Plaintiff's performance did not improve. (*Id.*) He communicated his disagreement with the feedback he was receiving regarding his performance. (doc. 79-2 at 3; doc. 67 at 911.)

Between October and December 2016, Plaintiff made complaints that he was being "discriminated" against by Supervisor. (doc. 67 at 786.) He claimed that he was given the heaviest

3

workload; denied training opportunities provided to others; not given credit for his accomplishments; denied the opportunity to work on certain projects; assigned on-call duties unfairly; and unfairly placed on a PIP based on misrepresentation of the performance gaps forming its basis. (*See Id.* at 786, 804-13.) Plaintiff also made complaints of being "treated . . . like a second-class citizen." (doc. 67 at 777,786; doc. 79-2 at 57-58.)

Consultant was assigned to investigate Plaintiff's claims of discrimination and unfair treatment. (doc. 67 at 786.) Plaintiff stated to her that "maybe because I am Chinese, he is Indian he does not like me." (doc. 79-2 at 65.) When asked if he had ever heard Supervisor say "that he does not like Chinese," Plaintiff conceded to Consultant that he had not. (*Id.*) Her investigation revealed that Plaintiff did not have "a larger workload than other team members." (*Id.* at 791.) The rest of the team described Plaintiff as "difficult to work with, and . . . [he] isolated himself and did not communicate enough with the rest of the team." (*Id.*) The investigation into training opportunities revealed that Plaintiff was unable to attend due to funding, unavailability, failure to request to attend, or opportunities being offered on a need-only basis. (doc. 67 at 792-93.) The investigation also revealed that at least eight employees of "diverse races and national origins reported having on-call responsibilities[.]" (doc. 67 at 791.) On November 17, 2016 Senior HR Manager Jenny Haag (Manager) reviewed Consultant's notes regarding Plaintiff's complaints. (doc.79-2 at 130; doc. 67 at 590.) Manager and Consultant concluded that there had not been any discrimination toward Plaintiff. (*See* doc. 67 at 623,912; 79-2 at 149.)

When Plaintiff's PIP expired on October 24, 2016, he had failed to complete its requirements. (*Id.* at 714.) Rather than move forward with termination, Defendants extended Plaintiff's PIP by an additional 30 days. (*Id.*; doc. 79-2 at 65.) During the entire period Plaintiff was

4

on a PIP, he made more than one complaint regarding his treatment by Supervisor and objected to the PIP. (doc.67 at 595-96; doc. 79-2 at 137.)

Plaintiff was not the only employee to complain about Supervisor's behavior. (*See* doc. 67 at 601-02; doc. 79-2 at 69-71.) Manager previously received a complaint from an employee that Supervisor "dropped the F bomb a couple of times on a conversation that he had" because the employee failed to "get back to him in time." (doc. 79-2 at 143; doc. 67 at 601-02.) In an email to the employee, Supervisor wrote "[n]ext time this happens I am going to write you up and take away the phone from you." (doc. 79-2 at 69.)

After the expiration of the 30-day extension of the PIP, Defendants once again chose not to move forward with termination. (doc. 67 at 917.) They decided to monitor Plaintiff's performance through the end of 2016, and reassess his performance at the beginning of January 2017. (*Id.*) Despite being given additional opportunities "beyond those contemplated by the [Employer's] policies relating to performance improvement," Plaintiff failed to improve his performance. (*Id.*)

On approximately January 11, 2017, Supervisor requested Plaintiff's termination. (doc. 67 at 795; doc. 79-2 at 4.) The request was reviewed by Consultant, Manager, the HR Director Gina Malayter, and the Director of Technology, Billy Felton. (doc. 67 at 795.) On January 24, 2017, 92 days after the expiration of his 60-day PIP, Plaintiff was terminated for failure to meet performance expectations. (*See id.* at 716.) His job responsibilities were split between two of his team members, and his position was never filled. (*Id.* at 356.)

## II. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on all of Plaintiff's claims. (*See* doc. 66.)

Summary judgment is appropriate when the pleadings and evidence on file show that no

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If it "bears the burden of proof on an issue, either because [it] is the plaintiff or as a defendant [it] is asserting an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325 (internal quotation omitted). There is "no genuine issue as to any material fact [where] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. It must go beyond its pleadings and designate specific facts to show there is a genuine issue for trial. *Id.*; *Anderson*, 477 U.S. at 249.[3] Rule 56 imposes no obligation for a court "to sift through the record in search of evidence to support a party's opposition to summary judgment."

---

[3] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

*Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Parties must "identify specific evidence in the record" supporting challenged claims and "articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### III. TITLE VII

Employer moves for summary judgment on Plaintiff's Title VII claims. (*See* doc. 65.)

Title VII makes it unlawful for employers to discriminate against individuals with respect to their "compensation, terms, conditions, or privileges of employment, because of [their] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims for discrimination in the employment context are analyzed under a well-established burden-shifting paradigm. "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998); *see also Moss v. BMC Software Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). He may establish a *prima facie* case of employment discrimination through either direct

evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007). Under the *McDonnell Douglas* framework, a plaintiff must show that he (1) belongs to a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than a similarly qualified individual outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *McCoy*, 492 F.3d at 556 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)).

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). "[T]he burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Moss*, 610 F.3d at 922 (citing *Berquist*, 500 F.3d at 349). If the employer articulates a legitimate, non-discriminatory reason for the employment decision,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols*, 138 F.3d at 566.

## A.    **Prima Facie Case**

Employer seeks summary judgment on Plaintiff's claims for race and national origin

discrimination claims on grounds that he cannot satisfy the elements of a prima facie case. (doc. 66 at 35.)

  1. *Qualified Individual*

  Employer initially argues that Plaintiff cannot bring forward evidence to show that he was qualified. (doc. 66 at 35.)

  As noted, a plaintiff must show that he was qualified for his position. *See McDonnell Douglas*, 411 U.S. at 802. The Fifth Circuit has adopted a two-part test to determine whether an employee is qualified. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993). First, a court must determine whether the employee "could perform the essential functions of the job i.e. functions that bear more than a marginal relationship to the job at issue." *Id.* Second, if the court concludes that he cannot perform the essential functions of the job, it "must determine whether any reasonable accommodation by the employer would enable [him] to perform those functions." *Id.* at 1393-94.

  To meet its summary judgment burden, Employer brings forward evidence that Plaintiff struggled to perform his job at a satisfactory level: he struggled to work on several projects at a time, missed important deadlines and milestones, failed to meet project goals, failed to deliver some projects altogether, made errors on assignments, caused project delays, and did not actively communicate about project delays until the deadline was approaching. (doc. 67 at 704-14,732-64.) It presents evidence that Supervisor received numerous complaints from team members and other teams concerning Plaintiff's work performance. (*Id.* at 907.) Employer has met its burden by bringing forward evidence showing that Plaintiff was not qualified because he could not perform the essential functions of the job.

  The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue

of material fact regarding whether he was qualified.  *See Bienkowski v. American Airlines, Inc*., 851 F.2d 1503, 1506 & n. 3 (5th Cir.1988) (noting that a prima facie discrimination claim requires the plaintiff to prove that he was objectively qualified for the position, i.e., that he held the necessary qualifications for the job for which he was hired).  He presents evidence that he was an employee for 18 years, did not lose any required certification, and did not suffer any physical or medical disability which required work accommodations or arrangements.  (doc. 79-2 at 2-3); *see Bynum v. Fort Worth Independent School District*, 41 F.Supp.2d 641, 653 (N.D.Tex.1999) (granting summary judgment for the defendant due to the plaintiff's failure to establish a prima facia case of employment discrimination where the plaintiff's decertification disqualified him from continuing to serve as a teacher).  Plaintiff also presents evidence that when he initially applied for the job, he was interviewed by Supervisor, who recommended that he move forward in the interview process. (*Id.* at 217.)  The interviewer "was satisfied with [Plaintiff] based on the . . . qualifications of the job, and he recommended him to HR," and he was hired  (*Id.*)

Plaintiff has met his burden to identify competent summary judgment evidence of record that raises a genuine issue of material fact about whether he was qualified.

2.    *Similarly Situated*

Employer also moves for summary judgment on grounds that Plaintiff cannot bring forward evidence to show that he was treated less favorably than other similarly situated employees. (doc. 66 at 37.)

As noted, to establish a prima facie case of discrimination under Title VII, Plaintiff must show that he was treated differently than similarly situated employees. *See Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003). The Fifth Circuit narrowly construes the "similarly

10

situated" requirement. *Silva v. Chertoff*, 512 F. Supp. 2d 792, 803 n.33 (W.D. Tex. 2007) (collecting cases). "An employee who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee*, 574 F.3d at 259-60 (quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable employment histories." *Id.* (citation omitted).

To meet its summary judgment burden, Employer presents evidence showing that Plaintiff was not the only employee who was assigned on-call duties. (*See* doc. 67 at 360, 703,791, 914.) At least seven to eight other employees reported having on-call responsibilities, and being on-call was part of Plaintiff's job description.  (*See Id.* at 703, 791, 914.)  It presents deposition testimony showing that Consultant's investigation into Plaintiff's complaints of being treated less favorably revealed that he did not have a larger work load than other employees, and he was not unfairly denied training opportunities.  Employer also points out that Plaintiff failed to identify another member of his team who was put on a PIP but not terminated.  *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (the plaintiff's Title VII claim failed because he failed to identify another employee with a similar job rating, who was placed on a PIP but not terminated).  It argues that Plaintiff cannot to point to evidence in the record showing that at least one coworker outside of his protected class was treated more favorably under nearly identical circumstances.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact. He points to deposition testimony showing that a complaint was made by an

11

employee against Supervisor when he "dropped the F bomb a couple of times on a conversation that

he had" because the employee failed to respond to Supervisor within a timely manner, and to an

email in which Supervisor threatened to write the employee up if this happened again. (doc. 79-2

at 69, 143.) Plaintiff claims that after this incident, the employee was not reprimanded for his "lack

of communication and was given the opportunity to transfer teams," which was an opportunity he

did not get when he began experiencing issues with Supervisor. (doc. 78 at 9-10.) He fails to present

evidence showing that this employee was not reprimanded, or that he was transferred, however.[4]

He also fails to identify evidence showing that this employee was similarly accused of failing to

communicate when on call, or that he was the subject of complaints from team members and other

teams regarding his work ethic. Plaintiff fails to bring forward sufficient evidence to demonstrate

that the employment actions at issue were taken under nearly identical circumstances. *See Paske*

*v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (To establish the fourth element, the plaintiff was

required to show, inter alia, that his "conduct that drew the adverse employment decision [was]

'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment

decisions.").

　　Plaintiff argues that he does not need to show that similarly situated employees were treated

more favorably because he has identified evidence showing that his job duties were taken over in

part by an individual outside his protected class and that he was "replaced by a non-Chinese North-

Asian." (*See* doc. 78 at 16, 19; doc. 79-2 at 226.) Employer presents evidence that Plaintiff's

position was never filled, however, and that his duties were taken over in part by two team members,

including one member who was the same race as Plaintiff. (*See* doc. 67 at 356.) "Transfer of work

---

[4] Plaintiff's citations to the record are inconsistent, alternating between citations to Defendants' bates numbers, deposition exhibits, and deposition page numbers, and he fails to cite to the appendix or CM/ECF.

by a terminated employee to other employees does not constitute 'replacement' in an employment-discrimination context." *Culwell v. City of Fort Worth, Tex.*, 503 F. Supp. 2d 813, 817 (N.D. Tex. 2007) (citing *Roper v. Exxon Corp.*, 27 F.Supp.2d 679, 682 (E.D.La.1998)).

Because Plaintiff failed to present or identify evidence showing that a "similarly situated employee" outside his protected classes was treated more favorably than him, or that he was replaced by someone outside his protected classes, he has not met his burden to identify competent summary judgment evidence of record raising a genuine issue of material fact regarding this element of a prima facie case of discrimination. *See Maestas v. Apple, Inc.,* No. A-11-CV-852-LY, 2012 WL 12897395, at *5 (W.D. Tex. Nov. 14, 2012), *aff'd*, 546 F. App'x 422 (5th Cir. 2013); *see also Jones v. FJC Sec. Servs., Inc.*, 40 F. Supp. 3d 840, 850-51 (S.D. Tex. 2014), *aff'd by* 612 F. App'x 201 (5th Cir. 2015) ("Similarly situated individuals must be 'nearly identical' and must fall *outside the plaintiff's protective class*.") (emphasis added) (citing *Wheeler*, 415 F.3d at 405).

Since there is no genuine issue of material fact on at least one element of his *prima facie* case for discrimination, Employer is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

## B.     <u>Legitimate Non-Discriminatory Reason</u>

If an employee establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

Even assuming for purposes of this motion only that Plaintiff had identified sufficient

evidence to establish a prima facie case of discrimination, Employer proffers evidence showing that it had a legitimate, non-discriminatory reason for terminating his employment. It presents deposition testimony showing that Plaintiff missed deadlines, was unresponsive or otherwise demonstrated poor communication skills, showed inadequate attention to detail, and overall inability to work independently. It also presents evidence that Supervisor received complaints from team members as well as complaints from other teams regarding Plaintiff's performance. It provides sworn statements and deposition testimony showing that Plaintiff failed to achieve satisfactory performance in the five specific areas of improvement or complete the requirements of his PIP. (*See* doc. 67 at 348, 390, 709-10.) Employer has identified evidence of record showing that Plaintiff was terminated for poor performance. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 32 (5th Cir. 1997) (poor job performance and difficulty working with others are legitimate, non-discriminatory reasons for termination).

The burden now shifts to Plaintiff to raise a genuine issue of material fact by showing either that the proffered reasons are a pretext for discrimination, or that his protected class status was a motivating factor for the adverse employment action.

## C.    **Pretext/Mixed-Motive**

Employer argues that Plaintiff cannot provide evidence showing that the proffered reason for his termination is pretextual. (doc. 66 at 39.)

As discussed, to establish pretext, a plaintiff "must put forward evidence rebutting each of the non-discriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."

*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citation omitted) (internal quotation marks omitted). A plaintiff will not establish pretext by relying solely on her subjective belief that discrimination has occurred. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 337 (5th Cir. 1997).

Plaintiff presents deposition testimony showing that he met one of the five areas of improvement outlined in his PIP by sending his weekly status reports and keeping Supervisor "in the loop." (doc. 79-2 at 218.)  He fails to provide evidence that he met the remaining four areas of improvement, however, or that his failure to meet the other four areas outlined in his PIP was not the reason for his termination.  As noted, Plaintiff's unsupported assertion that he was the only one who was assigned on call duties, or that he was the only one reprimanded is not sufficient for a reasonable jury to conclude that he was treated less favorably than a similarly situated employee. As noted, neither conclusory allegations nor unsubstantiated assertions satisfy his summary judgment burden. *Little*, 37 F.3d at 1075.  Plaintiff's unsupported assertions that Supervisor reprimanded him for "subjective and false reasons" to get him terminated, and that the human resources investigation was flawed, are likewise insufficient for a jury finding of pretext or discriminatory motive.  *See Steele v. SGS-Thomson Microelectronics, Inc.*, 962 F.Supp. 972, 978 (N.D. Tex. 1997).  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).  Plaintiff has not identified evidence of discriminatory intent.

Plaintiff fails to provide any evidence, either circumstantial or direct, that permits a reasonable jury to believe that Employer's reason for his termination was false and that illegal discrimination was the actual reason, or that his protected characteristics were a motivating factor for his termination.  Because Plaintiff has failed to identify any evidence of pretext or discriminatory

motive, summary judgment should be granted in Employer's favor with respect to his Title VII discrimination claim.

## IV. RETALIATION

Employer also moves for summary judgment on Plaintiff's retaliation claim. (doc. 66 at 50.)

"Title VII ... prohibit[s] discrimination against employees who have opposed an unlawful employment practice, or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment practices statute." *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 162 (5th Cir.2008) (per curiam) (citing 42 U.S.C. § 2000e–3(a)). "A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir.2005)).  Under the *McDonnell Douglas* framework, Plaintiff must establish a *prima facie* case of retaliation by showing (1) he participated in protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection existed between his protected activity and the adverse employment action. *Arora*, 294 F. App'x at 162; *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir.2009).  "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citations omitted).

16

A.    **Prima Facie Case**

Employer moves for summary judgment on Plaintiff's retaliation claim on the grounds that he cannot establish a prima facie case. (doc. 66 at 50.)

1.    *Protected Activity*

Employer contends that Plaintiff did not engage in an activity protected under Title VII. (doc. 66 at 51.)

"Protected activity is opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir.2000) (citation omitted); *see also* 42 U.S.C. § 2000e–3(a). If the conduct complained of by a plaintiff had nothing to do with race, color, religion, sex or national origin, he cannot maintain a retaliation claim under Title VII. *See Arora*, 294 F. App'x at 162 (finding no protected activity where the complained of activity did not involve an employee being treated unfairly due to race or sex); *Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 346–47 (5th Cir.2008) (per curiam) (no protected activity where plaintiff failed to show opposition to a violation of Title VII).

Employer brings forward evidence showing that Plaintiff's claim is based on an email he sent "suggesting that [Supervisor is] not doing this work in managing his team," rather than on any protected activity. (doc. 67 at 331, 334.) It has met its summary judgment burden. The burden now shifts to Plaintiff to present or identify evidence that raises a genuine issue of material fact on this element.

Plaintiff presents evidence that he engaged in protected activity by complaining of race discrimination, including handwritten notes, emails he sent to HR officials complaining of several

17

things, including his performance evaluations, favoritism, and alleged discrimination by Supervisor. (*See* doc. 79-2 at 57-59, 65.)  Consultant's handwritten notes reflect his complaint that "maybe because I am Chinese, he is Indian he does not like me."  (*Id.* at 65.)  Plaintiff also presents deposition testimony that HR was aware of his complaints of discrimination against Supervisor. (*Id.* at 124, 127.)  An internal or informal complaint of discrimination may constitute protected activity for purposes of a prima facie case of retaliation.  *Rodriguez v. Wal-mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013); *Amanduron v. American Airlines*, 416 F. App'x 421, 424 (5th Cir. 2011). Plaintiff has presented sufficient evidence to raise a genuine issue of material fact regarding whether he engaged in protected activity.

### 2. Causal Link

Employer also moves for summary judgment on the grounds that Plaintiff cannot present evidence of a causal link between his complaints and his termination. (doc. 66 at 43.)

To ultimately succeed on its retaliation claim, Plaintiff must prove that a causal link existed between the protected activity and the adverse action. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 489 (5th Cir. 2014), *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804 (2015). Although the prima facie element of causation appears identical to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff, the standard for establishing a causal link at the prima facie case stage is much less stringent. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).  A causal link is established if the facts show that the adverse employment action "was based in part on knowledge of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). The plaintiff is not required to show that his protected activity was the sole factor in motivating the employer's challenged decision. *Long*, 88 F.3d at 305

18

n.4; *accord Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002); *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001). To satisfy the causation prong, the plaintiff's evidence must support the inference that "the employment decision and his protected activity were not wholly unrelated." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (internal citations omitted).

Here, Employer presents evidence that Plaintiff was placed on a PIP for poor performance on August 18, 2016, prior to his first complaint of discrimination during the midpoint meeting for his PIP, in September 2016. (doc. 67 at 319-20, 369, 750-53, 786.) It also presents evidence that although Plaintiff's PIP expired, Defendants extended it for 30 days instead of terminating him. (*Id.* at 303,346,499,557,714.) It points to evidence showing that the decision to terminate Plaintiff was made on approximately January 11, 2017, after several meetings with HR in which his performance issues were discussed, and that he was given "multiple chances" to improve his performance and was not terminated until 92 days after his 60-day PIP period expired. (*Id.* at 716.) Employer has met its summary judgment burden to provide evidence showing the absence of a causal link. The burden now shifts to Plaintiff to identify record evidence creating a genuine issue of material fact on this element.

Plaintiff argues that the close temporal proximately between his complaint in September 2016 and the decision to terminate him one month later, coupled with the pretexual reason for his termination, is sufficient to state a causal connection. (doc. 78 at 23.) The causation requirement may be satisfied by showing "'close timing between an employee's protected activity and an adverse action against him.'" *Garcia v. Professional Contract Serv., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (quoting *Feist*, 730 F.3d at 454); *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948-49 (5th Cir. 2015). This is particularly the case when the protected activity and the

19

adverse employment action occur "very close" in time. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *see Evans*, 246 F.3d at 354 (internal citations omitted) ("Close timing between an employee's protected activity and an adverse action against [him] may provide the "causal connection" required to make out a prima facie case of retaliation.").  The Fifth Circuit has found gaps of two to four months sufficiently close to support an inference of a causal link.  *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007); *Evans*, 246 F.3d at 354 (noting that "a time lapse of up to four months has been found sufficient"); *Stroud v. BMC Software, Inc.*, No. 07-20779, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) (unpublished case) (explaining that this circuit had found temporal proximity of up to four months to be sufficient to show a causal link); *but see Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (noting a five-month lapse, by itself, does not support an inference on a causal link); *Barkley v. Singing River Electric Power Ass'n*, 433 F. App'x 254, 260 n.10 (5th Cir. 2011) (noting the Supreme Court has cited cases finding three and four month gaps insufficient).

Although Plaintiff argues that the decision to terminate him was made approximately one month after his complaint in September 2016, he fails to identify or present any competent summary judgment evidence of when the decision to terminate him employment was made.  Employer presents evidence that Plaintiff was informed in August 2016, that if he failed to meet the areas of improvement specified in the PIP by October 24, 2016, he would be subject to termination. It also presents deposition testimony to show that Plaintiff's supervisors did not want to terminate him and were hopeful that his performance would improve if he was given extensions on his PIP. (*Id.* at 554, 557.)  These extensions were given after Plaintiff's complaints of discrimination. (*See id.* at 369, 557, 794, 917.)

Viewing the evidence in the light most favorable to the non-movant, there was at best a gap of four months between Plaintiff's September 2016 complaint and his January 2017 termination. Although Plaintiff states in conclusory fashion that Employer's reason for terminating his employment was pretextual, he has not brought forward evidence to rebut Employer's evidence that it terminated him because of poor performance that was documented prior to his first complaint of discrimination. Standing alone, a gap of four months is not sufficiently close for a jury to conclude that there is a causal link between Plaintiff's termination and his complaints concerning Supervisor. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (noting that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" and citing cases holding that three- and four-month periods are insufficient to establish causality).

Because Plaintiff failed to show a genuine issue of material fact on at least one element of a prima facie retaliation claim, Employer's motion for summary judgment on this claim should be granted.

### B.    <u>Legitimate Non-Discriminatory Reason</u>

Even assuming that Plaintiff can establish a prima facie case of retaliation, Employer argues that it has proffered evidence of a legitimate, non-discriminatory reason for terminating Plaintiff's employment, i.e., poor performance.  (*See* doc. 66 at 52.)

As discussed with respect to Plaintiff's discrimination claim, Employer has provided evidence sufficient for a reasonable jury to conclude that the termination decision was related to Plaintiff's job performance.

21

C.    **But For Causation**

Employer contends that for same reasons that Plaintiff cannot show that its legitimate, non-discriminatory reason for terminating Plaintiff's employment is a pretext for discrimination, he cannot show that it was a pretext for retaliation.  (*See* doc. 66 at 52.)

"In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Feist*, 730 F.3d at 454 (quoting *Long*, 88 F.3d at 308).  Although temporal proximity may be enough for the causation element of a prima facie case, it is not on its own enough to establish pretext.  *See Garcia*, 938 F.3d at 243-44 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5t Cir. 2007) and *Feist*, 730 F.3d at 454).

Other than temporal proximity and his own subjective belief, Plaintiff has not brought forward any evidence to show that Employer would not have terminated him "but for" his complaints of discrimination.  As discussed, Employer presented evidence that Plaintiff struggled to perform the essential responsibilities of his job, was placed on a PIP requiring improvement in five specific areas, and was terminated for his failure to improve his performance. Even after his complaints of discrimination, Plaintiff was given several opportunities to improve his performance prior to his termination.  Because he failed to show a genuine issue of material fact on whether Employer would have terminated him "but for" his complaints about Supervisor, its motion for summary judgment on the retaliation claim should be granted.

### V. SECTION 1981

Defendants move for summary judgment on Plaintiff's § 1981 claim against them, arguing that he was terminated for his poor performance. (*See* doc. 65 at 34.)

22

"As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race. Section 1981 also provides a means of compensating a victim of racial discrimination." *Carroll v. General Accident Ins. Co. Of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990). To establish a right to relief under §1981, a plaintiff must show: (1) that he belongs to a racial minority; (2) that the defendant intended to discriminate against his on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). Claims of employment discrimination brought under section 1981 are governed by the same substantive legal standards and evidentiary framework applicable to claims brought under Title VII. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *see also Harville v. City of Houston, Mississippi*, 945 F.3d 870, 875 n. 10 (5th Cir. 2019) (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n.3 (5th Cir. 2016)). Since the same evidentiary burdens apply, a claim that fails on the merits under Title VII likewise fails under § 1981.

Here, Plaintiff asserts the same claims against Defendants for discrimination and retaliation under 42 U.S.C. § 1981 that he asserts under Title VII.[5] Because Plaintiff fails to make a prima facie showing of race discrimination under Title VII or to overcome Defendants' legitimate, non-discriminatory reason with evidence of pretext or mixed motives, his § 1981 claim likewise fails. Accordingly, Defendants' motion for summary judgment on this claim should be granted.

---

[5]"While the scope of individual liability under § 1981 remains unclear, the Fifth Circuit has held that an individual may be liable under § 1981 if [he] is 'essentially the same' as the employer in exercising authority over the plaintiff." *Thomas v. Link Staffing*, No. 4:17-CV-3902, 2019 WL 486875, at *3 (S.D. Tex. Jan. 8, 2019), *report and recommendation adopted sub nom. Thomas v. Staffing*, No. CV H-17-3902, 2019 WL 480133 (S.D. Tex. Feb. 7, 2019) (citing *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003); *Miller v. Wachovia Bank, N.A.*, 541 F. Supp. 2d 858, 863 (N.D. Tex. 2008)).

## VI. DEFAMATION

Supervisor moves for summary judgment on Plaintiff's defamation claim on the grounds that it is time-barred as well as meritless because the statements were never published and are protected by privilege. (doc. 66 at 44.)

"Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.–Waco 2005, no pet.)). A statement is defamatory if it exposes a person to "public hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity, virtue, or reputation." *Shaunfield v. Bank of America*, No. 3:12–CV–3859–B, 2013 WL 1846885 at *3 (N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.–Dallas 2003, no pet.)). Generally, a plaintiff who is a private individual must show that the defendant acted negligently regarding the truth of the defamatory statement at the time that the defendant published it. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 595–96 (5th Cir. 2007) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). Defamatory statements are published "if they are communicated to a third party capable of understanding their defamatory connotation and in such a way that the third party did so understand." *Crouch v. J.C. Penney Corp.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd sub nom. Crouch v. J C Penney Corp.*, 337 F. App'x 399 (5th Cir. 2009). Courts require "more particular pleading" for defamation claims to allow the opposing party to raise the appropriate defenses. *Moyer v. Jos. A. Bank Clothiers, Inc.*, No. 3:11-CV-3076-L, 2013 WL 4434901 at *6 (N.D. Tex. Aug. 19, 2013).

Under Texas law, an employer is protected from liability for defamation by a qualified

privilege that attaches to communications made in good faith regarding an issue of some concern or mutual interest to the speaker and the listener. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995). This privilege applies as long as the communications are made only to persons having an interest or duty in the matter to which the communications relate. *Id.* To overcome the privilege, a plaintiff must show the statement was made with actual malice. *Id.* In the context of a defamation claim, a statement is made with actual malice when it is made with knowledge of its falsity or reckless disregard as to its truth. *See Hagler v. Procter & Gamble Mfg. Co.*, 884 S.W.2d 771, 772 (Tex.1994) (per curiam). "Reckless disregard" means that a statement is made with a "high degree of awareness of probable falsity." *Carr v. Brasher*, 776 S.W.2d 567, 571 (Tex.1989). Once a defendant asserts the defense of privilege, the plaintiff must produce clear and convincing evidence of actual malice to survive summary judgment. *ContiCommodity Svcs., Inc. v. Ragan*, 63 F.3d 438, 442-43 (5th Cir.1995). Whether a communication is protected by a privilege is a question of law for the Court to decide. *Fitzjarrald v. Panhandle Pub. Co.*, 149 Tex. 87, 97, 228 S.W.2d 499, 505 (1950).

Supervisor presents evidence that the PIP, which contained the allegedly defamatory statements of which Plaintiff complains, was only shared with him and Consultant. (doc. 67 at 281.) He also present evidence showing that information about Plaintiff's performance was not shared with anyone outside the company. (*Id.* at 314,711.) Supervisor has met his summary judgment burden. He notes that in response, Plaintiff "does not contest that his defamation claims are untimely and otherwise meritless." (doc. 81 at 25.) Because Plaintiff has failed to respond or identify evidence in support of this claim, he has not shown a genuine issue of material fact, and Supervisor's motion for summary judgment on the defamation claim should be granted.

## VII.  RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**, and all of Plaintiff's

claims should be **DISMISSED with prejudice.**

**SO RECOMMENDED** on this 28th day of February 2020.

_(signature)_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_(signature)_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE